UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
NIMALI SONDEL,                                            :
                                                          :
                     Petitioner,          :      Civil Action No.
                                                          :
       v.                                                 :
                                                          :      **PETITION**
DARDEN RESTAURANTS, INC., GMRI,                           :
Inc. d/b/a OLIVE GARDEN, WILLIS                           :
REINKE, in his individual and professional                :
capacities,                                               :
                                                          :
                     Respondents.        :
------------------------------------------------------------X

Petitioner Nimali Sondel, by and through undersigned counsel, Wigdor LLP, hereby petitions this Court, in this action against Respondents Darden Restaurants, Inc. ("Darden" or the "Company"), GMRI, Inc. d/b/a Olive Garden ("GMRI"), and Willis Reinke (together, "Respondents") pursuant to Section 4 of the Federal Arbitration Act ("FAA"), as follows:

**NATURE OF THE DISPUTE**

1.      After being found to be in breach of its own arbitration agreement (the "Arbitration Agreement" or "DRP[1]") once, Darden has yet again breached the same Arbitration Agreement with the same employee in what can now only be described at this point as completely frivolous conduct and vindictive litigation tactics. See Darden Restaurants, Inc., et al. v. Sondel, et al., No. 15-cv-01138 (SRU) (the "D. Conn. Petition").

2.      Petitioner Nimali Sondel, a former employee of Darden, has alleged that she was unlawfully terminated following her protected complaints of sexual harassment.  Before this Court, Ms. Sondel previously argued that Darden breached the Arbitration Agreement between

---

[1] "DRP" stands for "Dispute Resolution Policy"

the parties when Darden refused to submit to an arbitration filed by Ms. Sondel with JAMS, Inc. (the "JAMS Retaliation Action"), despite the fact that the Arbitration Agreement expressly permitted Ms. Sondel to commence arbitration proceedings before JAMS, Inc. ("JAMS"). Darden – who preferred to arbitrate before the American Arbitration Association ("AAA") – argued that, notwithstanding the express provisions of the Arbitration Agreement, it should be permitted to unilaterally determine the arbitral forum and dictate that proceedings take place in AAA. The Court found Respondents' arguments wholly unavailing and compelled arbitration in JAMS.

3. Ms. Sondel's efforts to get Darden to proceed with arbitration before JAMS – which is what the parties had agreed to by contract – were not insubstantial and resulted in significant fees, costs and expenses. As such, by breaching the Arbitration Agreement, Ms. Sondel suffered damages. Darden refused to pay Ms. Sondel's expenses incurred, and Ms. Sondel informed Darden that she would file an action for breach of contract to recover the full damages. However, a dispute arose as to whether a post-employment breach of contract action was covered by the scope of the Arbitration Agreement, which by its express terms only covers "all employment-related disputes or claims" or "work-related claims." Ex. A at pp. 2, 9. Given that the Arbitration Agreement states that any interpretation of the Arbitration Agreement should be determined by an arbitrator, Ms. Sondel filed an action for injunctive relief in the form of a declaratory judgment with Resolute Systems, Inc. ("Resolute") – an agreed upon arbitral service provider under the Arbitration Agreement (the "Resolute Declaratory Judgment Action"). The relief sought in the Resolute Declaratory Judgment Action is simply a ruling as to whether Ms. Sondel's anticipated breach of contract action is covered by the scope of the Arbitration Agreement.

4.      However, shortly after Ms. Sondel filed the Resolute Declaratory Judgment Action with Resolute, Darden filed claims of its own against Ms. Sondel, styled as counterclaims in the JAMS Retaliation Action (the "Darden Counterclaims").  The Darden Counterclaims include three specific requests for relief:  (1) a request for injunctive relief seeking a declaratory ruling that Ms. Sondel should be enjoined from pursuing the Resolute Declaratory Judgment Action and compelled to litigate her claims for declaratory judgment in JAMS, (2) a claim for damages based on an alleged breach of contract by Ms. Sondel for filing the Resolute Declaratory Judgment Action, and (3) a claim for damages based on an alleged violation of the implied covenant of good faith and fair dealing against Ms. Sondel for filing the Resolute Declaratory Judgment Action.

5.      By refusing to submit to the jurisdiction of Resolute in adjudicating the Resolute Declaratory Judgment Action and by asserting the Darden Counterclaims seeking monetary damages without first complying with the mandatory mediation procedure that the parties agreed to in the Arbitration Agreement (which Ms. Sondel was forced to engage in before she commenced her JAMS Retaliation Action despite asking for a waiver from that obligation), Darden has yet again breached the Arbitration Agreement.  Ms. Sondel simply seeks to compel Respondents to engage in arbitration pursuant to the terms of the binding Arbitration Agreement, and to enjoin JAMS from administering the Darden Counterclaims.

## PARTIES

6.      Petitioner Nimali Sondel is a former Darden employee, who currently lives in Ossining, New York.  At all relevant times, Ms. Sondel worked for the Olive Garden restaurant located at 36 Backus Avenue, Danbury, Connecticut 06810, and met the definition of "employee" and/or "eligible employee" under all applicable statutes.

7. Respondent Darden is a Florida business corporation that owns and operates several restaurant chains, including the Olive Garden restaurant located at 36 Backus Avenue, Danbury, Connecticut 06810. Respondent Darden maintains a principal place of business at 1000 Darden Center Drive, Orlando, Florida 32837. At all relevant times, Respondent Darden met the definition of "employer" and/or a "covered employer" under all relevant statutes.

8. Respondent GMRI is a Florida business corporation operating as a subsidiary of Darden and doing business as "Olive Garden." Respondent GMRI maintains a principal place of business at 1000 Darden Center Drive, Orlando, Florida 32837. At all relevant times, Respondent GMRI met the definition of "employer" and/or a "covered employer" under all relevant statutes.

9. Respondent Willis Reinke is a Director of Operations for Darden, overseeing the operations of nine restaurants owned by the Company in Connecticut, Rhode Island and Massachusetts. At all relevant times, Respondent Reinke had supervisory authority over Ms. Sondel and had the power to terminate the employment of employees, including, but not limited to, Ms. Sondel.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over this matter as the Arbitration Agreement at issue is a contract involving interstate commerce and is governed by the FAA.

11. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action, including the formation of the Arbitration Agreement breached by Respondents, took place and is taking place in the District of Connecticut.

## **FACTS AND PROCEDURAL HISTORY**[2]

12. Ms. Sondel is a former manager of an Olive Garden restaurant located at 36 Backus Avenue, Danbury, Connecticut 06810.

13. Ms. Sondel and Darden mutually agreed, as a condition of the employment relationship, to be bound by the Arbitration Agreement.  See Ex. A.

14. The Arbitration Agreement provides for mandatory mediation followed by mandatory arbitration.  Pursuant to its express terms,

> [I]f mediation does not resolve the dispute, ***either the Employee or the Company may submit the matter to binding arbitration***.

See Ex. A at p. 7 (emphasis added).

15. Also pursuant to Arbitration Agreement,

> [t]he arbitration will be referred to an arbitration service (such as the American Arbitration Association, **JAMS** or Resolute Systems, Inc.) for selection and appointment of a qualified arbitrator and administration of the arbitration process in accordance with applicable rules.

See Ex. A at p. 7 (emphasis added).

16. Ms. Sondel, a former employee of Respondents, alleged that she was unlawfully terminated in retaliation for her protected complaints of sexual harassment.

17. On June 17, 2015, pursuant to the Arbitration Agreement, Ms. Sondel filed a demand for arbitration with JAMS.  See Ex. B.

---

[2] We incorporate the entire sequence of salient facts dating back to the original action filed before this Court on July 24, 2015.

18. On June 19, 2015, Respondents, in breach of the Arbitration Agreement, refused to participate and/or pay for the arbitration proceeding before JAMS. See Ex. C.

19. Thus, on June 22, 2015, Ms. Sondel was forced to file a motion in JAMS, requesting, *inter alia*, an order compelling Respondents to participate in the arbitration filed in JAMS. See Ex. D (exhibits excluded).

20. On that same day that Ms. Sondel filed her motion to compel in JAMS, Respondents unilaterally filed a demand for arbitration with the AAA – without Ms. Sondel's consent and in direct violation of both the Arbitration Agreement and the AAA Rules, which are expressly incorporated by reference. See Exs. E, F.

21. AAA then improperly opened an action at Respondents' request. See Ex. E.

22. On June 26, 2015 (after JAMS preliminarily granted Ms. Sondel's motion to compel JAMS arbitration), Ms. Sondel filed an action in the Southern District of New York (captioned as Sondel v. Darden Restaurants, Inc., et al., No. 15-cv-4986 (PAC) (the "SDNY Petition")) to compel Respondents to engage in arbitration pursuant to the terms of the Arbitration Agreement, compel Respondents to comply with the JAMS arbitral ruling, and enjoin AAA from administering an arbitration of the dispute. See Ex. G (exhibits excluded).

23. On June 29, 2015, AAA closed the arbitration improperly commenced by Respondents. See Ex. H.

24. On June 30, 2015, pursuant to AAA's closure of the arbitration, Ms. Sondel voluntarily dismissed the SDNY Petition without prejudice, as there did not appear to be any controversy outstanding. See Ex. I. At that point, the only arbitral action remained in JAMS. See Ex. J (without enclosure).

25. Not to be deterred, on July 24, 2015, Respondents filed the D. Conn. Petition against Ms. Sondel, seeking to compel arbitration in AAA and to enjoin JAMS from administering arbitral proceedings. This action was virtually a mirror-image of Ms. Sondel's SDNY Petition, and sought nearly the exact-opposite relief previously requested by Ms. Sondel. See Ex. K (exhibits excluded).

26. On August 4, 2015, Ms. Sondel filed a motion to dismiss the D. Conn. Petition and/or compel arbitration before JAMS. See Ex. L (exhibits excluded). The motion was fully briefed by both parties, and on October 15, 2015, oral argument was held before the Court in Bridgeport, Connecticut. The Court issued its ruling from the bench in Ms. Sondel's favor, granting Ms. Sondel's motion to compel arbitration before JAMS and dismissing the D. Conn. Petition. See Exs. M, N, O.

27. By refusing to arbitrate in JAMS under the Arbitration Agreement, Darden breached the Arbitration Agreement, leading to the multiplication of proceedings and unnecessary damages to Ms. Sondel. During the course of this needless and duplicative litigation, Ms. Sondel suffered and accrued damages in the way of out-of-pocket expenses as well as attorneys' fees.

28. As such, Ms. Sondel reached out to Respondents' counsel to inquire whether certain expenses would be paid by Darden to avoid the need for Ms. Sondel to file and litigate an action for breach of contract. Respondents chose not to voluntarily reimburse Ms. Sondel for the requested out-of-pocket expenses. See Ex. P at p. 6. Ms. Sondel informed Respondents' counsel that she would pursue a breach of contract action in Court but offered Respondents the opportunity to articulate whether they believed such an action was covered by the Arbitration Agreement. Ms. Sondel's counsel explained that this was a post-employment breach of contract

7

action, and the Arbitration Agreement, by its express terms, is limited in its scope to covering only "employment-related disputes or claims" or "work-related claims."  Ex. P at p. 2.

29.     However, Respondents' counsel disagreed and reminded Ms. Sondel's counsel that any determination as to whether Ms. Sondel could pursue her claims in arbitration or in court would have to be determined by an arbitrator, given the following provision:

> The arbitrator will resolve any issue/dispute arising out of or relating to the interpretation or application of the DRP or its rules, including without limitation, any arbitration rules or procedures or manner in which the arbitration proceeding will be conducted.

See Ex. A at p. 7-8; Ex. P at pp. 3-4.

30.     As previously the subject of litigation, the Arbitration Agreement specifically designates three (3) alternative dispute resolution ("ADR") administrators for arbitration of disputes, including Resolute:

> The arbitration will be referred to an arbitration service (such as the American Arbitration Association, JAMS **or Resolute Systems, Inc.**) for selection and appointment of a qualified arbitrator and administration of the arbitration process in accordance with applicable rules.

See Ex. A at p. 7 (emphasis added).

31.     As such, on December 10, 2015, Ms. Sondel properly commenced the Resolute Declaratory Judgment Action, seeking a declaratory judgment stating whether post-employment claims for breach of the Arbitration Agreement are covered claims within the scope of the Arbitration Agreement.  See Ex. Q (exhibits excluded).[4]  Of particular note, Ms. Sondel did not assert any substantive claim for breach of contract.[5]

---

[4]     Although the Arbitration Agreement provides for a multi-step process before claims can proceed to arbitration, including the requirement of a mandatory mediation (see supra at p. 5), it

32. On December 18, 2015, Respondents filed an Amended Response to Ms. Sondel's JAMS Retaliation Action that included the Darden Counterclaims. As stated above, the Darden Counterclaims include three specific requests for relief: (1) a request for injunctive relief seeking a declaratory ruling that Ms. Sondel should be enjoined from pursuing the Resolute Declaratory Judgment Action and compelled to litigate her claims for declaratory judgment in JAMS[6], (2) a claim for damages based on an alleged breach of contract by Ms. Sondel for filing the Resolute Declaratory Judgment Action, and (3)[7] a claim for damages based on an alleged violation of the implied covenant of good faith and fair dealing against Ms. Sondel for filing the Resolute Declaratory Judgment Action.

33. Of course, just as before, Ms. Sondel has not breached the Arbitration Agreement. In fact, quite to the contrary, Ms. Sondel has followed the Arbitration Agreement directly according to its terms, as described above.

34. Actually, in a prime embodiment of the "pot calling the kettle black," it is Respondents who have breached the Arbitration Agreement by (i) refusing to submit to the Resolute Declaratory Judgment Action and (ii) filing the second and third Darden Counterclaims without first going through the mandatory mediation provision of the Arbitration Agreement.

---

would be nonsensical to require mediation of a request for injunctive relief and Respondents do not appear to take the position that the Arbitration Agreement imposes such an obligation.

[5] Although not before the Court, Petitioner finds it highly unlikely that the underlying dispute at issue is covered by the Arbitration Agreement, because it is a non-employment related breach of contract claim.

[6] The First Claim for Relief of the Darden Counterclaims strangely seeks to enjoin Ms. Sondel from pursuing her breach of contract claims in Resolute, but she has not asserted any substantive claims, but merely sought declaratory judgment as to the arbitrability of the dispute under the Arbitration Agreement.

[7] Apparently a typo, the Darden Counterclaims includes two claims titled the "Second Claim for Relief."

35. The parties expressly agreed that before any claim could be filed in arbitration, the parties must submit the dispute to mediation. See Ex. A at p. 7 ("if the mediation does not resolve the dispute, either the Employee or the Company may submit the matter to binding arbitration."). In fact, Darden had previously refused to waive the mandatory mediation provision for Ms. Sondel following her request. Respondents, however, unilaterally ignored the mandatory mediation procedure of their own Arbitration Agreement with respect to the Darden Counterclaims.

36. Unfortunately, in light of their past practice, it comes as no surprise that Respondents have again failed to abide by the terms of the Arbitration Agreement and are attempting to hijack the arbitration process in a way that they deem most advantageous to them. Respondents have again decided that they can unilaterally determine the forum in which disputes will be resolved.

37. The situation is identical to the one described by the Court on the record during oral argument regarding the D. Conn. Petition: "[Ms. Sondel] has the right to demand arbitration. She demanded arbitration. At that point there's an arbitration that [Darden] agreed to participate in that's pending when [Darden] file[d] [its] demand for arbitration with a competing entity. So as a practical matter, [Darden is] ***refusing to participate in the existing arbitration proceeding*** […]." See Ex. M at 6:17-24 (emphasis added).

38. The FAA, 9 U.S.C. §§ 1, *et seq.* simply provides that an arbitration agreement should be enforced according to its terms. See CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 673 (2012); Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57-58 (1995).

39. Ms. Sondel has fully complied with the requirements of the Arbitration Agreement and properly commenced her Resolute Declaratory Judgment Action in order to resolve one issue: whether her breach of contract claim is arbitrable.

## FIRST CAUSE OF ACTION
### (Claim For Injunctive Relief)
*Compel Respondents to Arbitrate Petitioner's Request for  
Declaratory Judgment in Resolute and Enjoin Respondents from Seeking  
Duplicative Injunctive Relief in JAMS*

40. Petitioner hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

41. Pursuant to 9 U.S.C. 4, in a civil action,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

42. As described herein, Petitioner submitted a declaratory judgment arbitration proceeding with Resolute pursuant to the express terms of the Arbitration Agreement.

43. As described herein, Respondents have breached and continue to breach the Arbitration Agreement by, *inter alia*, refusing to arbitrate the dispute in Resolute and requesting injunctive relief in JAMS.

44. Irreparable harm will result absent an order containing the relief requested herein as Ms. Sondel may be forced to expend time and resources arbitrating claims in a forum in which she did not agree to arbitrate and may be subject to arguably binding arbitral rulings.

45. Petitioner respectfully requests an order compelling Respondents to arbitrate Petitioner's request for declaratory judgment in Resolute and to enjoin Respondents from seeking duplicative injunctive relief in JAMS.

## SECOND CAUSE OF ACTION
### (Claim for Injunctive Relief)
*Compel Respondents to Comply with the Terms of the Arbitration Agreement with Respect to Respondents' Claim of Breach of Contract Against Petitioner*

46. Petitioner hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

47. Pursuant to 9 U.S.C. 4, in a civil action,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

48. As described herein, Respondents have breached and continue to breach the Arbitration Agreement by, *inter alia*, asserting substantive counterclaims in JAMS without first participating in mandatory mediation, which the parties agreed in the Arbitration Agreement would precede any arbitration.

49. Irreparable harm will result absent an order containing the relief requested herein, as Ms. Sondel did not waive her right to participate in mandatory mediation pursuant to the express terms of the Arbitration Agreement and may be forced to arbitrate a dispute with the Company unnecessarily.

50. Petitioner respectfully requests an order compelling Respondents to comply with the terms of the Arbitration Agreement with respect to Respondents' claims of breach of contract and violation of the covenant of good faith and fair dealing against Petitioner.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests an order:

A. Compelling Respondents to arbitrate Petitioner's request for declaratory judgment in Resolute; and/or,

B. Enjoining Respondents from proceeding with the improperly filed counterclaims with JAMS; and/or,

C. Ordering Respondents to pay all costs and fees incurred in connection with this proceeding; and/or;

D. Ordering such other and further relief deemed just and proper.

Dated: December 22, 2015
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By:  /s/ David E. Gottlieb
   Scott G. Grubin
   David E. Gottlieb (*to be admitted pro hac vice*)

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
sgrubin@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Attorneys for Petitioner*